CARLTON, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November 18, 1907.

1. CARRIERS OF PASSENGERS: Negligence: Proximate Cause and Physical Facts.  In an action by a passenger against a street railway company for injuries received while the plaintiff was alighting from one of the defendant's cars, and caused by the sudden starting of the car before she had time to alight, the plaintiff's evidence tended to show that while she was stepping down with the left foot upon the ground and the right upon the step, the car suddenly started forward causing her to fall, striking the back of her head against the step.  *Held*, it was not physically impossible that that kind of an injury could have happened in that way.

2. PERSONAL INJURIES: Measure of Damages: Moral Character.  In an action by a woman of unchaste character for damages caused by personal injuries which produced a miscarriage,

her right to recover damages for bodily or mental pain was not affected by her moral character.

3. ————: ————: ————: **Loss of Earnings.**    But her moral character could be taken into consideration by the jury for the purpose of determining what damages might be awarded for loss of earnings; her earning capacity would be affected by her character, and therefore it was error in such case to instruct the jury that they should consider her unchaste character only for the purpose of affecting her credibility as a witness.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest, T. M. Pierce* and *S. P. McChesney* for appellant.

(1)    The court erred in refusing to give an instruction in the nature of a demurrer to the evidence asked for by defendant.    (a) Because the evidence to support the plaintiff's contention is unreasonable, opposed to natural laws and is not entitled to any probative force. Champagne v. Haney, 189 Mo. 711; Sanguinette v. Railroad, 196 Mo. 466; Barrie v. Railroad, 102 Mo. App. 91; Spiro v. Railroad, 102 Mo. App. 263; Kreis v. Railroad, 148 Mo. 330.    The court erred of its own motion in submitting to the jury the instruction given. (a)    This instruction was erroneous because it is proper for a jury to consider in connection with the probability of a female plaintiff's ability to ·earn money, her moral character and standing in a case where a recovery is sought and permitted for future earnings.    Abbot v. Tolliver, 36 N. W. 622, 71 Wis. 64; Railroad v. Bush, 101 Ind. 582; Corning v. Corning, 6 N. Y. 97; Bruce v. Pruit, 5 Allen 100.    (b) This instruction was also erroneous because the court gave undue prominence and unwarranted emphasis to the proposition of law enunciated.    Jones v. Jones, 57 Mo. 142; Chouquette v. Barada, 28 Mo. 498; Swink v. Anthony, 96 Mo. App. 426.

*Irvin V. Barth* for respondent.

(1) The court did not err in refusing to give an instruction in the nature of a demurrer to the evidence asked for by defendant. Because the evidence to support the plaintiff's contention is entirely reasonable and in accord with natural laws. The appellate court will not disturb the jury's verdict unless it be so out of harmony with the laws of reason and nature as to be palpably the result of passion and prejudice. McNamara v. Transit Co., 106 Mo. App. 349; Stafford v. Adams, 113 Mo. App. 721; Neuman v. Transit Co., 115 Mo. App. 259; Gharst v. Transit Co., 115 Mo. App. 412; Schmidt v. Transit Co., 115 Mo. App. 454; Lang v. Railroad, 115 Mo. App. 497; Dunphy v. Stock Yards Co., 118 Mo. App. 523; Rattan v. Railroad, 120 Mo. App. 276; Majors v. Parkhurst, 124 Mo. App. 107, 100 S. W. 1100; Wahl v. Transit Co., 203 Mo. 261, 101 S. W. 1; McNulty v. Railroad, 203 Mo. 475, 101 S. W. 1082. (2) The court did not err in submitting to the jury the instruction on its own motion. The instruction is not error on the alleged ground that it forbade the jury to consider plaintiff's moral character in awarding damages. And if it had, it would nevertheless be the law. 1 Sutherland, Damages (3 Ed.), sec. 94, p. 273; Railroad v. Bush, 101 Ind. 588; Railroad v. Call, 42 Ill. App. 41; Hardy v. Railroad, 36 Fed. 657; Johnson v. Wells, Fargo & Co., 6 Nev. 224; Bruce v. Priest, 5 Allen, 100; Corning v. Corning, 6 N. J. 97; Boyle v. Case, 18 Fed. 880.

GOODE, J.—This is an action for personal injuries alleged to have been caused by the negligence of the crew of one of defendant's trolley cars. The amount prayed for is ten thousand dollars, and the verdict is for twenty-five hundred dollars.

The respondent boarded one of defendant's cars on the evening of February 24, 1904, at the corner of New-

stead avenue and the Suburban tracks in the city of St. Louis. She was accompanied by her young daughter. When near the corner of Fourteenth and Wash streets, respondent rang the bell for a stop in order that she might alight at that corner. Three or four people preceded her in alighting from the car, and just as she was in the act of stepping to the surface of the street, and while her left foot was on the ground and her right foot on the step of the car, the conductor, without warning to her, signalled to proceed; whereupon the motorman turned on the power, and in the sudden movement of the car, respondent was thrown down, her head striking the step of the car, rendering her unconscious for a short time. Respondent was three months advanced in pregnancy, and six days after the accident there was a hemorrhage of the womb, causing it to be necessary, as the physician testified, to remove the foetus, which was done. Expert evidence of a physician was given tending to show the fall of respondent would probably have brought about the miscarriage or loss of the foetus, and that diseased conditions might have resulted from the consequent operation. Respondent swore that prior to the accident she was a strong healthy woman, and had supported herself and her family by hard work. Her employment was to do washing for other families and take in sewing. She testified she was able to make from seven to fourteen dollars a week.

The first point made for reversal is that the physical facts contradict her oral testimony, inasmuch as she swore that when the car started she fell so the back of her head struck the step of the car. It is contended for the appellant this was a physical impossibility, because as respondent was in the act of alighting, she was facing outwardly at right angles to the car, and the forward movement of the car would give her such a motion in falling the back of her head could not possibly strike the step. It might well be argued to

the jury this would not have happened, but the argument that it could not, according to the laws of nature, is manifestly fallacious.   The sudden movement of the car might not have been a violent one, and still strong enough to cause respondent's right foot to slip off the step, letting her fall backward and strike her head against the car.   It appeared from respondent's own testimony she was unmarried and had been for a good while.   At the time of the accident she was with child, thus establishing that she was of unchaste character.   Respondent swore she would have been married that spring, had not the accident occurred.   Whether or not her pregnancy was due to intercourse with the man she expected to marry, does not appear.   During the progress of the trial it was strongly insisted by counsel for appellant, that as respondent's condition was the result of illicit intercourse, appellant could not be compelled to pay damages for the miscarriage—a palpable *non sequitur*, and so the lower court ruled.   This ruling was not complained of on appeal, but an instruction which grew out of the position taken by appellant's counsel as to this matter is assigned for error.   The instruction is as follows:

"Although the jury may believe and find from the evidence that the plaintiff prior to receiving the injuries complained of in this case, was unchaste or that the pregnancy alleged in the evidence was the result of her unchastity, such fact can only be considered by the jury as affecting her credibility as a witness in the case; and whether she was chaste or of moral character or not at or prior to the time of the alleged injuries does not in the least affect her right to recover in this case, and should not be considered by the jury in determining the alleged negligence of the defendant and the right of the plaintiff to recover for injuries, if any, through the negligence of defendant."

In instructing on the measure of damages, in case

there was a verdict for respondent, the jury were told they might assess her damages at any sum they believed from the evidence would be fair compensation for the pain of body or mind she had suffered or would suffer by reason of her injuries and directly caused thereby, and "for any loss of the earnings of her labor which she has sustained or will sustain, by reason of said injuries and directly caused thereby." The contention of appellant is that the court, in instructing the jury they might consider the fact that respondent was unchaste only as affecting her credibility as a witness in the case, committed error in view of the demand made by respondent to recover for future loss of earning capacity, and the fact that such a recovery was authorized by the court in instructing the jury on the measure of damages. It is argued that according to common experience, a woman of unchaste character would be likely to earn less at washing and sewing for families, than one of chaste character; and hence the jury were entitled to consider the fact that respondent was unchaste, not only as affecting her credibility as a witness, but in connection with the probable loss of earnings, which she had already, or might in the future sustain in consequence of her injury. We are inclined to the opinion that this proposition is well taken, though we do not say it would be right for the court to direct the jury to take her unchastity into consideration in assessing damages. What we must decide is, whether it was right to direct them to consider the fact for no other purpose except to determine respondent's credibility. No doubt there can be no difference in the measure of damages on account of the bad character of a party who sues for personal injuries, in so far as compensation for the pain of mind and body suffered in consequence of the injury, is concerned; for a person of depraved character may endure as much of such suffering as one of virtuous character, and be entitled to the same damages. The like doc-

trine would apply to loss of property or any other actual injury. But loss of earnings in such employments as the respondent pursued might, and very probably would, depend more or less upon the character of the party; that is to say, families who wanted a seamstress or laundress, might be inclined to discriminate between an unchaste and a chaste woman in favor of the latter, and give her employment in preference to the other and at better wages.

It is said in 8 Am. & Eng. Enc. Law (2 Ed.), p. 645, that there is a conflict of opinion on the question of whether or not evidence of the moral character of a plaintiff is admissible in an action for damages for personal injuries. But most of the opinions can be reconciled if attention is paid to whether or not the attempt to take the moral character of the person into consideration, is made in connection with damages for bodily and mental pain, or in connection with damages for loss of time or earnings. As already said, the moral character of the respondent has nothing to do with her right to recover damages for bodily or mental pain, but there are respectable authorities in favor of the proposition, that her character might have been considered by the jury in passing on what damages should be awarded for loss of earnings. This point was decided in Abbot vs. Tolliver, 71 Wisc. 64, 36 N. W. 622, a case strikingly similar to the one at bar. The lower court had charged that the fact that the plaintiff was unchaste, or had more than one husband, had nothing to do with the amount of damages she was entitled to recover. In disposing of the point on appeal the Supreme Court said:

"This charge was excepted to, and we think it had a tendency to mislead the jury on the question of damages. We do not wish to intimate that an unchaste woman who is maimed and disabled by an accident on the railroad may not suffer as much pain of body or anxiety of mind as a virtuous woman would from a like

injury; but still, when it comes to a question of awarding damages it may be that a jury would not give—perhaps ought not to give—the same damages for injuries to an unchaste woman that they would allow a virtuous, intelligent, and industrious woman, who could command good wages, or take care of a family. The fact of chastity as well as other personal virtues and business qualifications, would be proper matter for a jury to consider in making up their verdict as to what damages should be given as a compensation for the injury received in view of all the facts. We think the court erred in refusing a new trial on the ground that the damages were excessive. For this reason the judgment of the circuit court is reversed, and a new trial awarded."

In Boyle vs. Case, 18 Fed. 880, the action was for physical injury caused by a mob it seems, of which the defendants were members, and which had inflicted corporal punishment on the plaintiff, who was a bartender. It was held as to the compensatory damages for physical pain and mental anguish, that this fact was immaterial, but that the damages for the humiliation might depend somewhat upon it; thus holding that damages may sometimes depend on a plaintiff's character. The court said:

"A man whose life is low, coarse, and brutal, who is accustomed to brawls, to knock-down and drag-outs, may not feel the same degree of suffering and shame at being beaten or whipped as one who lives a higher and purer life, and who deserves and is accustomed to receive from his associates and the community personal esteem and favorable consideration. As I have said, what may be a great indignity to one person may not be felt to be such by another. Apply these suggestions to the circumstances of this case, as they appear to you from the evidence, and allow the plaintiff what you think right on this account.

"In estimating compensatory damages in this case, you will endeavor to reach a fair and just conclusion; and, in this respect, your conclusion ought not to be unfavorably affected towards the plaintiff by the number and respectability of the defendants, or the character of the motives or causes which induced them to act. Nor should these damages be diminished, so far as the physical pain and mental anguish are concerned, by the fact that the plaintiff is an obscure man in the lower walks of life—that he is a bar-tender, a professional gambler, or even a vagrant. The physical pain and mental anguish, which you find from the evidence the plaintiff suffered from the whipping and the attendant circumstances, you ought, by your verdict, to compensate him for, irrespective of his calling or condition in life. But the damages to be allowed for the indignity and disgrace involved in his treatment by the defendants, depends largely, as I have said, upon such circumstances."

In Kingston vs. Fort Wayne, etc., R. R. Co., 112 Mich. 40, 40 L. R. A. 131, the question was whether plaintiff's habit of intoxication could be shown on the question of the damages sustained in consequence of the injury. Plaintiff claimed damages for physical injury, that is, pain and suffering, and for loss of wages during the period of the accident, and for probable loss of future earnings. The injury was alleged to have been caused by a street car conductor carelessly pushing him from a car. From the opinion it appears the Supreme Court held first that the trial court had erroneously admitted proof of plaintiff's habits, but on further consideration held the evidence was properly admitted as throwing light on the probability of his securing employment and the continuity of any employment he might procure. It should be observed the ruling was that proof could be made of the actual fact that he was addicted to intoxication, and not proof of his reputation in that

regard.    Now in the present case the respondent proved herself that she was of unchaste character, and what we rule is, that the fact might be considered by the jury on the question of her probable loss of earnings in consequence of the accident.

In Metropolitan St. R. R. v. Kennedy, 82 Fed. 156, it was assigned for error that Kennedy was permitted to prove he was sober and industrious, but the court held it competent on the issue of damages as "the earning power of the plaintiff was an element in estimating the loss which he had sustained, and was likely to sustain in the future, by being incapacitated for labor in consequence of the injuries received."

The foregoing are all the decisions we have found which throw light on the point before us, and on their authority we hold the court erred in instructing the jury in such form that they might well think they could ignore the unchaste character of the respondent in assessing damages for loss of time or earnings.

For  respondent it is  argued,  the  instruction fairly interpreted, did not mean to forbid the consideration of respondent's character in connection with her loss of earnings, but only excluded it in connection with her right to recover at all for the injury received.  Respondent's counsel insist the court was compelled to instruct the jury, as was done, in view of the position taken by counsel for the appellant before the court, and in the presence of the jury, that respondent's unchastity was grounds for a verdict against her.  Appellant's counsel did not so contend, but as indicated above, insisted that as respondent's pregnancy was the result of unlawful intercourse, appellant ought not to be mulcted in damages for the abortion which followed the injury.  However, if we should allow the lower court was justified by the attitude of appellant's counsel in instructing the jury that the mere fact that respondent was unchaste would not debar her from recovering com-

pensation for her sufferings and actual loss, we would have to hold nevertheless, the instruction was written in such form as was calculated to induce the jury to believe they should consider her bad character only as affecting her credibility as a witness, and not as affecting her right, either to a verdict, or the amount of damages to be assessed if the issues were found in her favor.

The other points made by appellant's counsel have been considered and found devoid of merit. The judgment is reversed and the cause remanded. All concur.